UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLANS-I, INC., <br> Plaintiff, <br> v. <br> SPEKTRE WORKS, INC., <br> Defendant. | Case No. 19-cv-00634-PJH <br><br> **ORDER** <br> Re: Dkt. No. 24 |

Before the court is defendant's motion to dismiss. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiff Volans-I, Inc. ("Volansi") "builds and operates long-range, high payload unmanned aerial systems ["UAS" or drones], and is a recognized industry leader in UAS development and operation." Dkt. 20, First Amended Complaint (the "FAC") ¶ 8. Defendant SpektreWorks also develops and builds UASs. FAC at 1.

In early 2017, plaintiff hired SpektreWorks as an independent consultant. Id. That relationship was formalized in a consulting agreement. FAC ¶¶ 24, 26; Dkt. 26-1, Ex. A (the "Consulting Agreement"). In June 2017 and February 2018, pursuant to amendments to that agreement, SpektreWorks began providing consulting and professional services for Volansi, which included "designing, engineering, testing and other work for and incidental to the hardware and software necessary for Volansi's UASs." FAC ¶¶ 29-31; Ex. A. Those UAS platforms would eventually become Volansi's

C-20 and the C-10 UASs (the "C-Drones").  Id. ¶ 42.

The Consulting Agreement contains a broad confidentiality agreement that prohibited SpektreWorks from disclosing "Confidential Information" to others and from using it in any manner other than in connection with SpektreWorks' services for Volansi. Id. ¶¶ 35-37; Ex. A ¶¶ 3-4.  Under the Consulting Agreement, Confidential Information includes any information, materials, or knowledge about Voansi, its business, products, methods, technology, and "Consultant Work Product."  FAC ¶ 36; Ex. A ¶ 4.  Consultant Work Product, in turn, includes anything SpektreWorks created or developed in connection with services provided pursuant to the Consulting Agreement.  FAC ¶ 34; Ex. A ¶ 3.1.

Plaintiff alleges that its success in the drone market depends on its ability to "protect its confidential information and trade secrets, including . . . the design of its UASs, its product testing, . . . design and layout of its avionics board, its employees' engineering analysis that informed and confirmed design choices," etc.  FAC ¶ 18. According to the complaint, Volansi's proprietary software, in conjunction with Volansi's engineers' flight analysis and testing data, allows novel predictive modeling of variables that are otherwise difficult to predict in the UAS industry.  Id. ¶¶ 77-119.  Volansi uses that information, inter alia, to design the layout of and choose the combinations of components on its avionics circuit boards that it uses on its C-Drones.  Id.  In short, according to the FAC, Volansi's trade secrets include both the chosen hardware and its layout, as well as the data and processes used to make those hardware and design decisions.  Further, Volansi alleges that it treats its Confidential Information as confidential and takes significant steps to protect it, such that it constitutes a trade secret. See, e.g., id. ¶¶ 108, 111, 112, 114-16, 119.

Put another way, plaintiff alleges that its success depends on keeping confidential the exact types of information that SpektreWorks had access to while working for Volansi pursuant to the parties' Consulting Agreement.  As outlined below, this suit arises out of the defendant's alleged breach of that agreement and related misconduct.

First, plaintiff alleges that around June 5, 2018, Volansi became aware that SpektreWorks was advertising, and presumably manufacturing and selling an avionics board and UAS aircraft based on Volansi designs. FAC ¶¶ 56, 131. When confronted, SpektreWorks agreed to cease and desist that conduct. Id. ¶ 57. Shortly thereafter, on June 19, 2018, SpektreWorks terminated the parties' Consulting Agreement, effective June 30, 2018. Id. ¶ 58.

Further, and despite agreeing to cease and desist that conduct, on September 9, 2018, plaintiff allegedly discovered that SpektreWorks had resumed its unauthorized conduct by introducing the "Cobalt," an alleged knock-off of Volansi's C-10. Id. ¶ 61. Specifically, plaintiff alleges that the Cobalt's avionics board copies the design of Volansi's C-Drone avionics board and utilizes many identical components. See, e.g., id.¶ 71. By copying plaintiff's design and component choice, defendant allegedly relied upon and used the Confidential Information described above. Id. ¶¶ 76-78. According to plaintiff, SpektreWorks could not have developed the Cobalt without misappropriating Volansi's trade secrets. Id. ¶¶ 64-67.

Second, plaintiff alleges that SpektreWorks designed the Cobalt to look like the C-Drones. Id. ¶ 131. Though Volansi concedes that the airframes are made by a third-party, it alleges that SpektreWorks painted its frame white to match the C-Drones. Id. Relatedly, in one instance in February 2018, SpektreWorks posted a picture of a C-20 during a test flight, which was not public, on SpektreWorks' own social media account, implying that it was a SpektreWorks product. Id. ¶¶ 132-33.

Third, plaintiff alleges that in late-summer 2018, SpektreWorks converted Volansi's electric motors by convincing a third-party to deliver the motors to SpektreWorks rather than Volansi. FAC ¶¶ 137, 140-42. Relatedly, plaintiff complains that upon the cessation of the contract, SpektreWorks failed to return all of Volansi's Confidential Information and failed to return equipment worth $10,900, in violation of the Consulting Agreement. Id. ¶¶ 145-146, 148, 152-54.

Lastly, plaintiff alleges that SpektreWorks' pursuit of agreements with two third-

3

1 party drone manufacturers and sellers has caused plaintiff harm because the subject of those agreements, the Cobalt, is based upon plaintiff's Confidential Information. Id. ¶¶ 157-62.

Based on that alleged conduct, plaintiff asserts seven causes of action for: (i) breach of contract, (ii) violation of California Business & Professions Code § 17200 (the "UCL"), (iii) violation of 18 U.S.C. § 1836 et seq., the Defend Trade Secrets Act (the "DTSA"), (iv) violation of 15 U.S.C. § 1125(a), the Lanham Act, False Designation of Origin and False Descriptions, (v) intentional interference with an actual or prospective economic advantage, (vi) conversion, and (vii) constructive trust.

Defendant now seeks dismissal of causes of action three and four in their entirety and dismissal of certain factual bases supporting the other five causes of action.

## BACKGROUND

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court

4

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B. Analysis**

**1. Plaintiff's Defend Trade Secret Act Claim**

Defendant first argues that plaintiff's DTSA claim must be dismissed because the FAC does not sufficiently describe the claimed trade secrets and does not allege the act of misappropriation with sufficient particularity.  The court disagrees.

First, the court finds that plaintiff has sufficiently identified its alleged trade secrets.  To identify a trade secret, a plaintiff "need not spell out the details of the trade secret" the claim is based on, see Space Data Corp. v. X, No. 16–CV–03260–BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017), but the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade," Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164–65 (9th Cir. 1998); Space Data Corp., 2017 WL 5013363, at *2 (same).  The pleadings must give a defendant "reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery."  Calendar Research LLC v. StubHub, Inc., No. 2:17-CV-04062-SVW-SS, 2017 WL 10378336, at *3 (C.D. Cal. Aug. 16, 2017).

Read as a whole, the FAC satisfies that standard.  Volansi alleges that the relevant trade secrets include the specific combination and lay out of the components on its avionics board, its flight and testing data, as well as Volansi's proprietary software.  Together, those trade secrets allow Volansi to make C-Drone design decisions—decisions that themselves allegedly constitute trade secrets.  Moreover, by alleging how defendant had access to the trade secrets—pursuant to the parties' consulting

5

relationship—the FAC further defines the contours of the trade secrets at issue in this case.

Second, the court finds that plaintiff has adequately alleged the acts of misappropriation. "[T]here is no requirement that [plaintiff] plead exactly how Defendant[ ] improperly obtained [or used] the alleged trade secret." Autodesk, Inc. v. ZWCAD Software Co., No. 5:14-CV-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) (addition in original). Plaintiff has pled that the parties entered into a contractual agreement that gave defendant access to Volansi's Confidential Information. FAC ¶¶ 36-40, 184, 188. Plaintiff further alleges numerous similarities between the SpektreWorks' Cobalt and Volansi's C-10. See e.g., Id. ¶ 71. Lastly, plaintiff alleges that defendant has relied upon, used, and continues to use plaintiff's trade secrets. Id. ¶ 76-106. The court finds those allegations sufficient at this stage in the litigation. "[A]s discovery has not yet commenced, it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used [a plaintiff's] trade secrets, given that Defendants are] the only ones who possess such information." Autodesk, 2015 WL 2265479, at *6 (internal quotation marks omitted); see also Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 883 (N.D. Cal. 2018) (similarities in technology plus access through NDA held sufficient); E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek, No. 1:17-cv-00808-DAD-EPG, 2018 WL 2463869, at *7 (E.D. Cal. June 1, 2018) (same).

Accordingly, the court DENIES defendant's motion to dismiss plaintiff's DTSA claim. Because defendant levels the same challenges against plaintiff's breach of contract claim to the extent it is premised on misappropriation of confidential information, see Dkt. 30, Reply at 3 n.3; FAC ¶ 168 (a)-(c), the court DENIES defendant's motion with respect to that challenge as well.

**2. Plaintiff's California Law Claims**

Defendant next argues that certain factual bases for plaintiff's UCL, intentional interference, conversion, and constructive trust claims (the "California claims") are

preempted under California's Uniform Trade Secrets Act ("CUTSA"). That is because, according to defendant, those claims are based upon the same nucleus of facts that would allegedly support a CUTSA claim.

Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. Cal. Civ. Code § 3426.7; Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 233-36 (2010), disapproved on other grounds by Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011). It therefore supersedes claims based on the same nucleus of facts as trade secret misappropriation. See Integral Dev. Corp. v. Tolat, 675 F. App'x 700, 704 (9th Cir. 2017) (citing Silvaco, 184 Cal. App. 4th at 232); Anokiwave, Inc. v. Rebeiz, No. 18-CV-629 JLS (MDD), 2018 WL 4407591, at *2 (S.D. Cal. Sept. 17, 2018). At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action. See Qiang Wang v. Palo Alto Networks, Inc., No. C 12-05579 WHA, 2013 WL 415615, at *4 (N.D. Cal. Jan. 31, 2013) (collecting cases).

At this juncture, the court finds that defendant's motion as to this issue must be DENIED. Critically, defendant concedes that each of plaintiff's California claims are independently supported by allegations unrelated to misappropriation. For that reason, rather than arguing that the California claims are entirely preempted by CUTSA, defendant argues that particular theories or factual bases for those claims must be dismissed based on CUTSA preemption. For example, defendant argues that paragraphs 174 & 177 of plaintiff's § 17200 claim should be dismissed because they essentially allege trade secret misappropriation. See Dkt. 30-1, Ex. 6. At the same time, however, defendant concedes that CUTSA does not preempt the "passing off" basis for the § 17200 claim. See FAC ¶ 173. The same is true for defendant's challenge to plaintiff's other California claims. See, e.g., id. ¶ 220-21 (alleging defendant converted electronic motors); id. ¶ 209 (intentional interference claim premised on same underlying

7

conduct); id. ¶ 224 (same as to constructive trust claim); see also Ex. 6.

Accordingly, the court finds that CUTSA preemption does not require that any claim be dismissed. As defendant concedes, stripped of the misappropriation-related allegations, the FAC's remaining factual allegations independently support each of plaintiff's California claims. Of course, that result may be different at summary judgment if, for example, plaintiff's California claims rely solely on evidence indistinct from evidence supporting a trade secret misappropriation claim.

### 3. Plaintiff's Lanham Act § 1125(a) Claim

Lastly, plaintiff asserts a claim based on § 1125(a) of the Lanham Act based on defendant allegedly "passing off" defendant's knockoff drone as defendant's own and based on defendant "passing off" plaintiff's C-20 as defendant's own in a SpektreWorks' social media posting. See FAC ¶ 200; see Dkt. 28, Opposition, at 13. The court finds that plaintiff's Lanham Act claim must be DISMISSED.[1]

As relevant here, § 1125(a) states

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . shall be liable in a civil action . . .

"In order to prevail on a suit under this provision, a plaintiff must prove two basic elements: (1) it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to cause confusion. The first of these basic elements is comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark." S. California Darts Ass'n v. Zaffina, 762 F.3d 921, 929 (9th Cir. 2014) (internal citations and quotation marks omitted).

"Whether a mark is protectable depends on its degree of 'distinctiveness.'" Id.;

---

[1] Defendant also argues that the part of plaintiff's intentional interference and § 17200 claim related to this same conduct, see FAC ¶¶ 173, 208, must be dismissed for the same reason plaintiff's Lanham Act claim must be dismissed. It is not obvious to this court—nor has defendant explained—why the "passing off" theory of liability for those two state law claims rises and falls with plaintiff's Lanham Act claim. For example, passing off someone else's product as one's own may constitute an "unfair" practice for purposes of § 17200 even if such conduct does not violate the Lanham Act.

8

see Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010). "There are five traditional categories of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." Zaffina, 762 F.3d at 929 (internal quotation marks omitted). "Generic marks are not eligible for trademark protection. Descriptive marks become protectable if they acquire a 'secondary meaning,' by becoming distinctive 'as used on or in connection with the applicant's goods in commerce.'" Id. at 929 (internal citation omitted). The other categories are automatically protectable. Id.

Here, plaintiff has pointed to no allegations in the complaint supporting a theory of distinctiveness as to the C-10, C-20, or plaintiff's avionics board. Nor has plaintiff alleged that it owns the non-identified mark.[2] Accordingly, the court finds that this claim must be DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

For the foregoing reasons, defendant's motion is GRANTED with respect to plaintiff's § 1125(a) claim and DENIED in all other respects. If plaintiff wishes to amend its § 1125(a) claim, it may do so by June 21, 2019. No new parties or claims may be added without defendant's consent or leave of court.

**IT IS SO ORDERED.**

Dated: May 30, 2019

PHYLLIS J. HAMILTON
United States District Judge

---

[2] Indeed, the court finds it hard to understand how a blurry social media photo—showing a drone frame created by a third party with no other distinguishing marks—could create "confusion." Similarly, as to the avionics board, the court is confounded by how defendant's picture of a confidential avionics board could cause confusion—not to mention how such a board could be the basis for a distinctive mark.

9